# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| REGINALD R. PEDERSEN, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-06-489-SPS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Reginald R. Pedersen requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id.* § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997), *citing Pacheco v. Sullivan*, 931 F.2d 695, 696 (10th Cir. 1991). The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence or substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of [the] evidence must take into account whatever in the

---

[1] Step one requires the claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on March 28, 1957, and was forty-eight (48) years old at the time of the administrative hearing. He graduated from high school, only attending special education classes, and previously worked as a kitchen helper and custodian. The claimant alleges he has been unable to work since May 12, 2004, because of a learning disability and depression.

**Procedural History**

On May 24, 2004, the claimant filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Both applications were denied. ALJ Lantz McClain conducted a hearing and determined that the claimant was not disabled on May 12, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant's mental retardation was a severe impairment but that the claimant retained the residual functional capacity ("RFC") to lift and/or carry up to fifty pounds occasionally and twenty-five pounds frequently, stand and/or walk for six hours of an eight-hour work day,

and sit for two hours of an eight-hour work day. He also limited the claimant to simple repetitive work with no more than incidental contact with the public (Tr. 15). The ALJ concluded that the claimant was not disabled because he could return to his past relevant work as a kitchen helper (Tr. 16).

**Review**

The claimant contends that the ALJ erred: (i) by failing to find that his depression and involuntary movements were severe impairments at step two; and (ii) by failing to determine that he met a listing at step three. The Court finds that the ALJ *did* err in considering the claimant's depression at step two and in analyzing whether the claimant met a listing at step three.

The record reveals that in July 2004 the claimant was functioning at a first grade reading level. While attending public school, the claimant participated in special education courses and was on an Individualized Education Program (Tr. 112A). Psychologist Sidney Pepper, Ph.D., administered the WAIS-III to the claimant in October 2004, and it was determined that he had a verbal IQ of 66, performance IQ of 62, and a full scale IQ of 61. He was assessed with "intellectual functioning in the range of mild retardation." (Tr. 113-15). Later in October 2004, Karen S. Kendall, Ph.D., reviewed the claimant's records and completed a Psychiatric Review Technique ("PRT") form based on mental retardation. She determined that the claimant had a moderate degree of limitation in his restrictions of daily activities, difficulties maintaining social functioning, and difficulties in maintaining concentration, persistence, or pace. Dr. Kendall found that the claimant had no repeated

episodes of decompensation of an extended duration (Tr. 125-38). She also completed a mental RFC assessment and indicated that the claimant was markedly limited in his ability to understand, remember, and carry out detailed instructions and in his ability to interact appropriately with the public. Dr. Kendall summed up her findings and concluded that the claimant could understand, remember and carry out simple tasks, interact with others at a superficial level (but not the general public), and adapt to a work setting (Tr. 116-18).

Treatment notes from the Central Oklahoma Family Medical Center show that the claimant began taking Zoloft in November 2004 after he complained of symptoms of depression, *e. g.*, feeling sad and poor sleep (Tr. 122). He completed a questionnaire noting that he "fe[lt] downhearted, blue and sad[,] g[ot] tired for no reason[,] [was] restless and [could not] keep still[,] [and was] more irritable than usual" much of the time (Tr. 121, 151). By December 2004, the claimant's mood was "much improved" and the claimant was experiencing "good" sleep and appetite, but his depression still was described as a "significant impairment." (Tr. 119, 150). In April 2005, the claimant's depression and social anxiety were noted to be well-controlled on Zoloft (Tr. 148), but by August 2005, the claimant was described as suffering from "profound social phobia." (Tr. 146). In October 2005, he was found to be suffering from chronic problems which included, *inter alia*, depression, mood disorder, anxiety, and social phobia (Tr. 142-43). The claimant testified at the administrative hearing that the Zoloft helped his depression "a little bit," but he continued to feel depressed (Tr. 183). The claimant's mother testified that he had "a lot of social problems." (Tr. 185).

The ALJ found at step two of the sequential process that the claimant's depression was not a severe impairment because it was controlled by medication (Tr. 15). However, the portion of the medical record cited for this finding does not reflect that the claimant's depression was controlled, only that he was taking Zoloft for depression. Further, although the medical record *does* indicate elsewhere that the claimant's depression was controlled with Zoloft, this was in April 2005 (Tr. 148), the relief appears to have been temporary at best. The claimant testified that he continued to feel depressed even under medication (Tr. 183), which the medical record confirms, *i. e.*, subsequent treatment notes indicate that the claimant continued to suffer from depression while taking Zoloft (Tr. 142-44) and that his problems were "profound" (Tr. 146). The ALJ should not have ignored this probative evidence, *see Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[The] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted], particularly at step two, where the claimant's burden of showing an impairment is *de minimis*. *See Hawkins*, 113 F.3d at 1169 ("A claimant's showing at level two that he or she has a severe impairment has been described as 'de minimis.'"), *citing Williams*, 844 F.2d at 751.

Further, even if the ALJ correctly determined that the claimant's depression was controlled with medication in April 2005, at a minimum he should have considered whether

it was still under control at the time of the decision denying benefits. *See*, *e. g.*, *Jakubowski v. Commissioner Social Security*, 131 Fed. Appx. 341, 344 (3rd Cir. 2005) ("There is evidence in the record that in 1999-2000, Dilantin did control Appellant's seizures. But Dr. Carran opined in 2002 that Dilantin was a 'failed medication,' and switched Appellant to different medications. And Appellant testified at the 2002 hearing before the ALJ that she continued suffering seizures despite the Dilantin. Thus, the only then-fresh evidence concerning the effectiveness of Dilantin supports Appellant's position that her seizures were not remediable by Dilantin.") [unpublished opinion]. The Court therefore concludes that the ALJ failed to properly analyze whether the claimant's depression was a severe impairment at step two of the sequential process. This error was compounded by the failure to analyze the claimant's depression at step three, as will be discussed below.

With regard to step three, the ALJ determined that although the claimant's mental retardation was a severe impairment, it did not meet Section 12.05 of the Listing of Impairments. *See* 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 12.05. The ALJ specifically considered Section 12.05C and Section 12.05D, but he provided no analysis of the former and a substantially flawed analysis of the latter.

Both sections require "a valid verbal, performance, or full scale IQ of 60 through 70[.]" 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.05C, 12.05D. The claimant certainly satisfies this requirement, as he scored a verbal IQ of 66, performance IQ of 62, and a full scale IQ of 61 on the WAIS-III (Tr. 113-15). But Section 12.05C also requires "a physical or other mental impairment imposing an additional and significant work-related limitation

of function[.]" 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05C. The ALJ provided no analysis whatever as to this requirement; he simply stated in conclusory fashion that "there is no evidence of 'C' criteria." (Tr. 15).

"'[T]he purpose of § 12.05C is to compensate a claimant with an IQ in the 60-70 range and a limitation of function that affects his work.'" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), *quoting Sird v. Chater*, 105 F.3d 401, 403 n.6 (8th Cir. 1997). "[W]hether a claimant has a § 12.05C 'significant limitation' should 'closely parallel' the step two standard, and is to be made without consideration of whether the claimant can perform any gainful activity beyond the analysis as made at step two." *Hinkle*, 132 F.3d at 1352-53, *citing Fanning v. Bowen*, 827 F.2d 631, 634 (9th Cir. 1987) (if claimant meets the § 12.05C listing and the durational requirement, "he must be found disabled without consideration of his age, education, and work experience.") [internal citations omitted]. Thus, if the ALJ had determined that the claimant's depression was severe at step two, he should have thereupon concluded that the claimant was disabled under Section 12.05C. But even if the ALJ properly concluded that the claimant's depression was not severe at step two, he should nevertheless have considered whether it qualified as a "mental impairment imposing an additional and significant work-related limitation of function" under section 12.05C. His failure to do so here (and to explain his findings) was erroneous.

In addition to appropriate IQ scores, Section 12.05D requires "at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration,

persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05D. The ALJ found that the claimant had moderate limitations in all the areas of functioning and no repeated episodes of decompensation (Tr. 15). But he cited no medical evidence in support of these findings, *see, e. g., Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994) ("[T]here must be competent evidence in the record to support the conclusions recorded on the [PRT] form and the ALJ must discuss in his opinion the evidence he considered" in reaching his conclusions regarding a claimant's mental limitations.) [quotation and citation omitted]; *see also Shivel v. Astrue*, 2008 WL 63417, *slip op*. at *2 (10th Cir. Jan. 7, 2008) (discussing the PRT form and noting that the Appeals Council's "decision lack[ed] any explanation of how it determined the impact Mr. Shivel's mental impairments had on his functionality[.]") [unpublished opinion], and he appears to have ignored evidence inconsistent therewith, *e. g.*, the mental RFC assessment completed by Dr. Kendall indicating marked limitations in three areas of functioning (Tr. 116-18), treatment notes suggesting difficulties in social functioning (Tr. 143, 146, 148), and evidence showing restrictions in activities of daily living (Tr. 69, 80, 81, 83, 113, 182, 187-88, 190-91) and dependence on his mother (Tr. 140, 182, 190). *See, e. g., Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all

of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative.") [quotation omitted]. At a minimum, the ALJ should have discussed the evidence on which he relied in determining that the claimant had only moderate limitations in functioning.

Because the ALJ erred at step two and at step three, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis as discussed above. On remand, the ALJ should properly evaluate the severity of the claimant's depression at step two, discuss in detail whether the claimant meets Section 12.05C or Section 12.05D of the Listing of Impairments, and determine again whether the claimant is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 27th day March, 2008.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**